IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:17-CV-55-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| PREMPEH ERNEST AGYEMANG, | ) | |
| | ) | |
| Defendant. | ) | |

On March 14, 2017, the United States of America ("United States" or "plaintiff") brought a civil action against Prempeh Ernest Agyemang ("Agyemang" or "defendant") to revoke his naturalization under 8 U.S.C. § 1451(a) [D.E. 1]. On March 19, 2018, the United States moved for summary judgment [D.E. 24], filed a memorandum in support [D.E. 25], and a statement of material facts [D.E. 26]. On April 13, 2018, Agyemang responded in opposition [D.E. 30].[1] On April 27, 2018, the United States replied [D.E. 33]. As explained below, the court grants the government's motion for summary judgment.

I.

On June 1, 1960, Agyemang was born in Ghana. See [D.E. 26] 1. On February 4, 1989, Agyemang was first admitted to the United States. See [D.E. 27-4] 1. On February 1, 1995, Agyemang filed an application to adjust status. See [D.E. 27-4]. On June 20, 1995, Agyemang's application was approved, and he became a lawful permanent resident of the United States. See id. On February 24, 1999, Agyemang filed an application for naturalization in Charlotte, North Carolina.

---

[1] On April 7, 2018, Agyemang moved for summary judgment, see [D.E. 28], but later withdrew his motion. See [D.E. 29].

See [D.E. 27-2] 4. The application asked whether Agyemang has ever knowingly committed a crime for which he has not been arrested. See id. at 3. Agyemang responded "no" to this question. See id.

On June 16, 2000, Agyemang appeared before Officer David Johnson, an Immigration and Naturalization Service ("INS") officer, for an interview concerning his naturalization application. See [D.E. 27-2] 4. At this interview, Agyemang took an oath and affirmed that he would answer the questions truthfully. See Compl. [D.E. 1] ¶ 17; Ans. [D.E. 7] ¶17. Officer Johnson again asked Agyemang whether he ever knowingly committed a crime for which he has not been arrested, and Agyemang responded "no." See Compl. ¶¶ 20–21; Ans. ¶¶ 20–21. At the end of the interview, Agyemang signed the attestation clause in his application for naturalization which stated that he affirmed under the penalty of perjury that the contents of the application were true to the best of his knowledge and belief. See Compl. ¶ 23; Ans. ¶ 23; [D.E. 27-2] 4. On June 21, 2000, Agyemang's naturalization application was granted. See Compl. ¶ 24; Ans. ¶ 24. On November 8, 2000, Agyemang took the oath of allegiance and was granted United States citizenship. See [D.E. 27-9].

On November 5, 2003, Agyemang pleaded guilty to sexually assaulting his minor stepchild. See [D.E. 27-5]; [D.E. 27-6]; [D.E. 27-7]. Specifically, Agyemang pleaded guilty to two counts of sexual activity by a substitute parent or custodian in violation of N.C. Gen. Stat. § 14-27.7(a) (2003) and one count of taking indecent liberties with a child in violation of N.C. Gen. Stat. § 14-202.1. See [D.E. 27-5]; [D.E. 27-6]; [D.E. 27-7] 3.

II.

Summary judgment is appropriate when the record as a whole reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary

2

judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Section 1451(a) provides for revocation of naturalization and cancellation of the order granting citizenship when "a citizen's naturalization was illegally procured or was procured by concealment of a material fact or by willful misrepresentation." United States v. Teng Jiao Zhou, 815 F.3d 639, 642 (9th Cir. 2016) (quotation and alteration omitted); see 8 U.S.C. § 1451(a). Due to the severe consequences of denaturalization, the government must prove its case by clear, unequivocal, and convincing evidence. See Fedorenko v. United States, 449 U.S. 490, 504 (1981); United States v. Hirani, 824 F.3d 741, 746 (8th Cir. 2016).

A.

An individual "illegally procure[s]" citizenship under section 1451(a) when the individual did not meet the statutory requirements to become a naturalized citizen. See Fedorenko, 449 U.S. at 506; Teng Jiao Zhou, 815 F.3d at 643; United States v. Mwalumba, 688 F. Supp. 2d 565, 569 (N.D. Tex. 2010). The statutory requirements for naturalization include, among other things, that the individual be of good moral character for the five years immediately preceding the date of filing the application for naturalization until the date the individual takes the oath of citizenship and

3

becomes a United States citizen. See 8 U.S.C. § 1427(a); Teng Jiao Zhou, 815 F.3d at 643. Section 1101(f) lists behaviors that prevent an individual from establishing good moral character. See 8 U.S.C. § 1101(f). One such behavior includes giving false testimony in order to obtain immigration benefits. See 8 U.S.C. § 1101(f)(6). Section 1101(f) also contains a catch-all provision which states that "[t]he fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f); see Teng Jiao Zhou, 815 F.3d at 643. Generally, good moral character is evaluated on case-by-case basis. See 8 C.F.R. § 316.10(a). However, an individual who "commits any crime of moral turpitude during the statutory period, for which he is later convicted, is barred from naturalization." United States v. Rubalcava Gonzales, 179 F. Supp. 3d 917, 923 (E.D. Mo. 2016); see United States v. Suarez, 664 F.3d 655, 659–61 (7th Cir. 2011) ("[I]f the offense was committed during the statutory period when an applicant must possess good moral character, and the applicant is convicted of that offense, the applicant is statutorily barred from a finding of good moral character no matter when the conviction occurs." (emphasis omitted)); United States v. Jean-Baptiste, 395 F.3d 1190, 1193–94 (11th Cir. 2005); 8 C.F.R. § 316.10(b)(2)(i).

Agyemang did not meet the statutory requirement of possessing good moral character because Agyemang sexually abused a minor during the statutory naturalization period. Agyemang pleaded guilty to sexual activity by a substitute parent or custodian in violation of N.C. Gen. Stat. § 14-27.7(a) (2003) for the sexual assault he committed against his minor stepchild on April 1, 2000, approximately two months before his naturalization interview and approximately seven months before he was granted citizenship. See [D.E. 27-5]; [D.E. 27-6]; [D.E. 27-7]. Sexual abuse of a minor is a crime of moral turpitude which precludes an individual from establishing good moral character. See Ashcroft v. Free Speech Coalition, 535 U.S. 234, 244–45 (2002); United States v.

4

Santacruz, 563 F.3d 894, 896–97 (9th Cir. 2009); Rubalcava Gonzales, 179 F. Supp. 3d at 923–924; United States v. Gayle, 996 F. Supp. 2d 42, 49–52 (D. Conn. 2014); United States v. Okeke, 671 F. Supp. 2d 744, 749 (D. Md. 2009); United States v. Ekpin, 214 F. Supp. 2d 707, 714 (S.D. Tex. 2002). Accordingly, because Agyemang committed a crime of moral turpitude, he was precluded from establishing good moral character.

Agyemang also gave false testimony concerning his criminal history during his naturalization interview. On June 16, 2000, Agyemang appeared before Officer Johnson for an interview concerning his naturalization application. See [D.E. 27-2] 4. At this interview, Agyemang took an oath and affirmed that he would answer the questions truthfully. See Compl. [D.E. 1] ¶ 17; Ans. [D.E. 7] ¶17. Officer Johnson asked Agyemang whether he ever knowingly committed a crime for which he has not been arrested, and Agyemang responded "no." See Compl. ¶¶ 20–21; Ans. ¶¶ 20–21. False testimony or statements "made under oath during the interview portion of the naturalization process constitute 'false testimony' within the meaning of section 1101(f)(6)." United States v. Mejia, No. 3:16-cv-00509-BEN-WVG, 2017 WL 87070, at *3 (S.D. Cal. Jan. 10, 2017) (unpublished); see Kungys v. United States, 485 U.S. 759, 780–81 (1988); United States v. Alrasheedi, 953 F. Supp. 2d 112, 115 (D.D.C. 2013). Accordingly, because Agyemang gave false testimony under oath, he was precluded from establishing good moral character.

In opposition, Agyemang argues that he did not illegally procure his naturalization, give false testimony, or conceal material facts because the offense that led to his conviction occurred after he acquired citizenship. See [D.E. 31] 4, 8–9. In support, Agyemang cites his plea transcript which lists the date of the relevant offense as May 1, 2002. See [D.E. 31] 8–9.

The court rejects the argument. Agyemang's attorney committed a typographical error in listing the date of offense in the plea transcript. See [D.E. 27-6] 1. The judgment of conviction lists

5

the offense date as April 1, 2000, and the Gaston County District Attorney swore under the penalty of perjury that the correct offense date was April 1, 2000. See [D.E. 27-5]; [D.E. 27-6]. Moreover, Agyemang's testimony confirms that he understood he pleaded guilty to offense conduct that occurred on April 1, 2000. [D.E. 27-3] 37 (Q: Did you sexually assault your stepdaughter Janice on April 1, 2000?; A: No.; Q: But you plead guilty to that? A: Yeah.); see also Warrant & Affidavit [D.E. 28-5] (describing offense conduct beginning in April 2000). Furthermore, in 2017, Aygemang attempted to remove himself from the sex offender registry, and at a hearing on the issue, the victim testified that Aygemang began to sexually abuse her after school almost daily beginning in 2000. See [D.E. 27-6] 2. Accordingly, the government has proven by clear, unequivocal, and convincing evidence that Agyemang sexually assaulted his minor stepchild on April 1, 2000, during the statutory naturalization period. Even viewing the evidence in the light most favorable to Agyemang, the typographical error in the plea transcript does not raise a genuine issue of material fact concerning whether the offense occurred during the statutory period. See, e.g., United States v. Guerrero, No. CV-10-525-ST, 2010 WL 6420574, at *6 (D. Or. Dec. 21, 2010) (unpublished), report and recommendation adopted by 2011 WL 1225563 (D. Or. Mar. 31, 2011) (unpublished).[2]

B.

Naturalization also may be revoked if it was procured through the concealment of material facts or misrepresentations. See 8 U.S.C. § 1451(a); Kungys, 485 U.S. at 767. To revoke naturalization due to the concealment of a material fact or misrepresentation the government must prove "(1) the naturalized citizen must have misrepresented or concealed some fact; (2) the

---

[2] To the extent Aygemang argues that he did not commit the offense, see [D.E. 27-3] 37–38, estoppel defeats the argument. See, e.g., Allen v. McCurry, 449 U.S. 90, 94 (1980); United States v. Cornejo, 679 F. App'x 361, 363 (5th Cir. 2017) (per curiam) (unpublished); Jean-Baptiste, 395 F.3d at 1194; Rubalcava Gonzales, 197 F. Supp. 3d at 926.

misrepresentation or concealment must have been willful; (3) the fact must have been material; and (4) the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment." Ekpin, 214 F. Supp. 2d at 713; see Kungys, 485 U.S. at 767. A misrepresentation is willful if it was deliberate and voluntary. See Kungys, 485 U.S. at 767; United States v. Mohalla, 545 F. Supp. 2d 1035, 1042 (C.D. Cal. 2008); Ekpin, 214 F. Supp. 2d at 716. A misrepresentation or concealment is material if it has "a natural tendency to produce the conclusion that the applicant [is] qualified" to naturalize. Kungys, 485 U.S. at 772; see Mejia, 2017 WL 87070, at *5. Misrepresentations made during naturalization proceedings presumably disqualify the individual from citizenship. The individual, however, may rebut this presumption by establishing that he met all statutory requirements. See Kungys, 485 U.S. at 777; United States v. Vo, No. Civ.A. DKC20001624, 2001 WL 845657, at *4 (D. Md. July 25, 2001) (unpublished).

Ayegmang misrepresented his criminal history during his naturalization procedures. On February 24, 1999, Agyemang filed an application for naturalization in Charlotte, North Carolina. See [D.E. 27-2]. The application asked whether Agyemang had ever knowingly committed a crime for which he has not been arrested. See [D.E. 27-2] 3. Agyemang responded "no" to this question. See id. On June 16, 2000, Agyemang appeared before Officer Johnson for an interview concerning his naturalization application. See [D.E. 27-2] 4. At this interview, Agyemang took an oath and affirmed that he would answer all of the questions truthfully. See Compl. [D.E. 1] ¶ 17; Ans. [D.E. 7] ¶17. Officer Johnson again asked Agyemang whether he ever knowingly committed a crime for which he had not been arrested, and Agyemang responded "no." See Compl. ¶¶ 20–21; Ans. ¶¶ 20–21. At the end of the interview, Agyemang signed the attestation clause in his application for naturalization which stated that he affirmed under the penalty of perjury that the contents of the application were true to the best of his knowledge and belief. See Compl. ¶ 23; Ans. ¶ 23; [D.E. 27-

7

2] 4. This evidence is "sufficient for the government to prove misrepresentation or concealment." Gayle, 996 F. Supp. 2d at 54; see Rubalcava Gonzales, 179 F. Supp. 3d at 925.

As for willfulness, the questions were clear and there is no evidence in the record that Aygemang did not understand the question or that Aygemang did not know that sexually abusing his minor stepchild was a crime. See Rubalcava Gonzales, 179 F. Supp. 3d at 925–26; Gayle, 996 F. Supp. 2d at 55. Notably, Aygemang has spoken English since he was six years old and can read and write English at college level. See [D.E. 25] 5; [D.E. 27-3] 3–4. Thus, Aygemang's misrepresentation was willful. As for materiality, Agyemang's "failure to reveal that he had committed the crime of sexual abuse of a child are material." Ekpin, 214 F. Supp. 2d at 717; see United States v. Javier, No. 2:15-cv-14205, 2016 WL 7540585, at *6 (S.D. Fla. Aug. 25, 2016) (unpublished); Rubalcava Gonzales, 179 F. Supp. 3d at 927–28. If Aygemang admitted to sexually abusing his stepchild, he would have been statutorily ineligible for naturalization. See Mejia, 2017 WL 87070, at *5; Rubalcava Gonzales, 179 F. Supp. 3d at 927–28; Ekpin, 214 F. Supp. 2d at 717. Similarly, the fourth element is satisfied because Aygemang would not have been granted citizenship if he was honest about his criminal history. See United States v. Mohammad, 249 F. Supp. 3d 450, 461 (D.D.C. 2017); Mejia, 2017 WL 87070, at *5.

Accordingly, the government has proven by clear, unequivocal, and convincing evidence that Ageymang misrepresented and concealed material facts that would have shown he was statutorily ineligible for naturalization. See Ekpin, 214 F. Supp. 2d at 717. Even viewing the evidence in the light most favorable to Ageymang, Ageymang has failed to raise a genuine issue of material fact to the contrary. Thus, the government is entitled to summary judgment.

III.

In sum, the court GRANTS the government's motion for summary judgment [D.E. 24]. The clerk shall close the case.

SO ORDERED. This _3_ day of July 2018.

JAMES C. DEVER III
Chief United States District Judge